RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

STEPHEN D. AKRIDGE,

*Defendant-Appellant*.

No. 21-5803

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:00-cr-00081-2—Travis Randall McDonough, District Judge.

Decided and Filed: March 13, 2023

Before: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Nashville, Tennessee, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

THAPAR, Circuit Judge. When Stephen Akridge requested resentencing under the First Step Act, he represented that he remained a career offender under the Sentencing Guidelines. Citing Akridge's concession, serious criminal conduct, and post-sentencing misconduct, the district court declined to reduce his sentence. We affirm.

I.

In 2001, a jury convicted Akridge of four offenses: (1) conspiring to distribute at least 50 grams of crack cocaine; (2) possessing with intent to distribute crack cocaine; (3) possessing a firearm in furtherance of a drug-trafficking crime; and (4) possessing a firearm as a felon. *See* 18 U.S.C. §§ 922(g), 924(c)(1)(A), (e)(1); 21 U.S.C. §§ 841(a)(1), 846.

Because Akridge had prior convictions for aggravated assault and possession of cocaine, the district court sentenced him as a career offender under U.S.S.G. § 4B1.1. As a career offender, Akridge received a criminal history category of VI, and his base offense level was enhanced from 32 to 37. This yielded a then-mandatory Guidelines range of 30 years' to life imprisonment for Akridge's drug-trafficking offenses. Akridge also was subject to a mandatory consecutive 25-year sentence for using a firearm in furtherance of a drug-trafficking crime, since he had a prior conviction under 18 U.S.C. § 924(c). And finally, he faced a 10-year concurrent sentence for his felon-in-possession charge.

All told, the court sentenced Akridge to 55 years' imprisonment: 30 years for his drug offenses, a concurrent 10-year term for his felon-in-possession offense, and a consecutive 25-year term for possessing a firearm in furtherance of his drug offenses. We affirmed. *See United States v. Akridge*, 346 F.3d 618, 633 (6th Cir. 2003).

Congress subsequently passed the Fair Sentencing Act, which reduced the sentencing disparity between crack- and powder-cocaine penalties. Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). And in the First Step Act, Congress made this change retroactive. Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Citing these legal developments and his post-conviction rehabilitative efforts, Akridge asked the district court for a sentence reduction. In his resentencing motion, Akridge's counsel represented that his career-offender designation and corresponding offense level remained unchanged despite the recent legislation.

At resentencing, the district court agreed with the parties' representation that Akridge was subject to the same Guidelines range of 55 years' to life imprisonment.[1] Proceeding to the 18 U.S.C. § 3553(a) factors, the district court noted that while Akridge had taken a number of vocational and self-improvement classes, he had also received eleven disciplinary sanctions. Citing Akridge's post-sentencing misconduct and criminal history, the court declined to reduce his sentence. Akridge timely appealed.

## II.

A resentencing decision under the First Step Act must be both procedurally and substantively reasonable. *United States v. Boulding*, 960 F.3d 774, 783 (6th Cir. 2020). But because district courts have broad discretion to decide whether to reduce a sentence, our review is highly deferential. *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). Indeed, "[o]ther than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, appellate review should not be overly searching." *Id.* (internal citation omitted) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

On appeal, Akridge contests only the procedural reasonableness of his sentence. His argument is twofold.

First, Akridge argues that the district court miscalculated his career-offender Guidelines range. Under the Guidelines, a criminal defendant receives a career-offender designation if: (1) he was at least eighteen years old when he committed the instant offense; (2) the instant offense was a violent or controlled-substance felony; and (3) he committed at least two prior violent or controlled-substance felonies. U.S.S.G. § 4B1.1(a). If he satisfies all three prongs, a career offender will then receive a sentencing enhancement based on the statutory maximum applicable to his instant offense of conviction under § 4B1.1(a)(2). U.S.S.G. § 4B1.1(b).

Although Akridge concedes that he remains a career offender, he argues—for the first time on appeal—that the district court used the wrong instant offense for purposes of

---

[1]Indeed, trial testimony established that Akridge conspired to distribute more than 1.5 kilograms of crack cocaine, so even under the new crack-cocaine penalties, Akridge would still receive a base offense level of 32, enhanced to 37 as a career offender. *See* U.S.S.G. § 2D1.1(c).

§ 4B1.1(a)(2) when recalculating his career-offender Guidelines range. According to Akridge, instead of using his conviction for *conspiring* to distribute cocaine (which had a statutory maximum of life imprisonment), the district court should've used his conviction for *possessing* cocaine with intent to distribute (which had a statutory maximum of 30 years' imprisonment). Had the district court done this, Akridge would've received a total offense level of 34 (instead of 37) and a career-offender Guidelines range of 262 to 327 months' imprisonment (instead of 360 months' to life imprisonment). *See* U.S.S.G. § 4B1.1(b)(2). Akridge bases this argument on two recent cases: *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), and *United States v. Cordero*, 973 F.3d 603 (6th Cir. 2020).

Second, Akridge also contends for the first time that the district court erred by failing to account for *Havis* and *Cordero* while considering the § 3553(a) factors. In other words, he argues that the district court's "§ 3553(a) analysis was *procedurally* incomplete . . . because it was anchored" to the wrong career-offender range. Reply Br. 21.

The problem for Akridge is that he not only failed to raise these objections below, but actually conceded that his original Guidelines range applied. It is possible, then, that Akridge waived his procedural-reasonableness challenge. *See United States v. Olano*, 507 U.S. 725, 733 (1993). And waived arguments "are not reviewable." *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002); *see United States v. Ruiz*, 777 F.3d 315, 320 (6th Cir. 2015).

On appeal, both parties characterize Akridge's concession as an invited error rather than a waiver. Though invited error is a "branch" of waiver, the two doctrines are not the same. *Harvis v. Roadway Exp., Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). Indeed, waiver is the intentional abandonment of a known right, whereas invited error occurs when a litigant "contributes in some way to the district court's error without intentionally relinquishing his rights." *United States v. Woods*, --- F.4th ---, No. 21-5734, 2023 WL 2301472, at *7 (6th Cir. Mar. 1, 2023) (cleaned up). For this reason, invited errors "fall within the continuum between forfeiture and waiver." *Id.* (cleaned up). After all, when a party "provoke[s] the court" to reach a conclusion without expressly adopting that position, he doesn't intentionally abandon a right (waiver) or merely stay silent (forfeiture). *Id.* (quoting *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)). Rather, he invites error.

These differences are significant because while we never review waivers, we sometimes—albeit rarely—review invited errors to prevent "manifest injustice." *Id.* at *6 (quoting *United States v. Demmler*, 655 F.3d 451, 458 (6th Cir. 2011). And when we do, we review for plain error, the same standard we use for unraised objections. *Id.* at *7. The government, however, didn't argue waiver, only invited or plain error. So we have no briefing on whether we should treat Akridge's representation as having crossed "the hazy border between invited error and waiver." *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021). Nor does it matter to the outcome here. Even applying the invited-error standard, we conclude that Akridge induced the errors he now challenges on appeal and failed to show "manifest injustice." As a result, his challenge fails under the invited-error doctrine. And even if we reviewed for plain error, Akridge would still fail to meet his burden.

A.

Start with invited error. At resentencing, Akridge represented that his original Guidelines range remained unchanged. *See* R. 155, Pg. ID 681. And in his appellate briefing, Akridge "fully acknowledged" that he not only failed to request a lower range at resentencing, but "instead . . . likely invited" the Guidelines recalculation error he now challenges on appeal. Reply Br. 16.

Akridge's representation is significant because a party may not generally "complain on appeal of errors that he himself invited or provoked the court . . . to commit." *Sharpe*, 996 F.2d at 129 (quoting *Harvis*, 923 F.2d at 60). Indeed, we will reverse an invited error only in exceptional circumstances. *See United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020) (quoting *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991)).

Why is it so difficult to obtain review of invited errors? Because doing so interferes with our adversarial system, which "is designed around the premise that the parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). After all, Article III of the Constitution doesn't permit federal courts to "sally forth each day looking for wrongs to right." *United States v. Samuels*, 808 F.2d 1298, 1301 (8th

Cir. 1987) (Arnold, J., concurring in the denial of rehearing en banc). Instead, "[w]e wait for cases to come to us, and when they do we normally decide only questions presented by the parties" and preserved for appeal. *Id.* These considerations are especially salient here because when resentencing a defendant under the First Step Act, "[a]ll that is required is for a district court to demonstrate that it has considered the arguments before it." *Concepcion*, 142 S. Ct. at 2405.

As a result, we will only review an invited error if the inviting party shows that failing to do so "would result in manifest injustice." *Demmler*, 655 F.3d at 458. But here, Akridge hasn't satisfied his burden to demonstrate manifest injustice. In fact, he didn't even mention it in his briefing. So we decline to "relieve him of the consequences" of his invited error (assuming there was an error). *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1073 (6th Cir. 2014). To do otherwise would undermine our adversarial system, which "regards the adversary process as the best means of ascertaining truth and minimizing the risk of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979).

## B.

Even if Akridge could clear the invited-error threshold by demonstrating manifest injustice, he would still have to show that the district court committed plain error. *Howard*, 947 F.3d at 945. This is a demanding standard. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021). To meet that burden, Akridge must show that: (1) an error occurred; (2) that error was obvious; and (3) that error affected his "substantial rights." *Id.* at 2096. If he satisfies these three "threshold requirements," then we have discretion to grant relief if (4) we conclude "that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 2096–97 (cleaned up). But here, Akridge fails to show that the district court committed any error, let alone a plain one.

## 1.

Start with Akridge's allegedly miscalculated career-offender Guidelines range. When recalculating a defendant's Guidelines range under the First Step Act, a resentencing court is only permitted to make modifications that "reflect the retroactive application of the Fair

Sentencing Act." *Concepcion*, 142 S. Ct. at 2402 n.6. In other words, the First Step Act "tells [courts] to alter just one variable in the original sentence, not all variables." *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021).

But neither *Havis* nor *Cordero* fit within that single "variable" that resentencing courts are permitted to alter under the First Step Act. To be sure, in *Havis*, we held that attempt crimes don't count as career-offender predicate offenses. 927 F.3d at 387. And in *Cordero*, we extended *Havis* to exempt conspiracies to commit a controlled-substance offense as well. 973 F.3d at 626. But for the following two reasons, neither case "reflect[s] the retroactive application of the Fair Sentencing Act." *Concepcion*, 142 S. Ct. at 2402 n.6.

For one thing, we have repeatedly held that *Havis* doesn't apply retroactively. *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) ("*Havis*, a nonretroactive judicial decision announcing a new rule of criminal procedure, cannot serve as a basis for relief."); *United States v. McKinnie*, 24 F.4th 583, 587 (6th Cir. 2022) ("*Havis* does not apply retroactively."). And since *Cordero* merely extends *Havis* to a related set of offenses, it doesn't apply retroactively either. *Cordero*, 973 F.3d at 626. For another, *Havis* and *Cordero* didn't apply the Fair Sentencing Act or even mention crack-cocaine penalties. Instead, they covered career-offender predicate offenses. So neither case fits within the single "variable" that resentencing courts are permitted to consider when recalculating a defendant's Guidelines range under the First Step Act.

So Akridge didn't show that the district court committed any error, much less a plain one.

2.

Next, Akridge argues that the district court procedurally erred by failing to account for *Havis* and *Cordero* while considering the § 3553(a) factors. Akridge's argument carries even less force at this stage because after a district court properly recalculates a defendant's Guidelines range, "the First Step Act imposes no additional constraints on [its] discretion." *United States v. Foreman*, 958 F.3d 506, 513 (6th Cir. 2020). Though the resentencing court "may" consider nonretroactive changes at the § 3553(a) stage—such as those made in *Havis* and *Cordero*—nothing requires it to do so. *Concepcion*, 142 S. Ct. at 2402 n.6. Instead, "[a]ll that is

required is for a district court to demonstrate that it has considered the arguments before it." *Id.* at 2405. And here, the district court did exactly that.

To be sure, at the § 3553(a) stage, the resentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018) (quoting *Gall*, 552 U.S. at 50). But "[t]he appropriateness of brevity or length, conciseness or detail" is largely left to the resentencing "judge's own professional judgment." *Id.* at 1964 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

And here, the district court sufficiently considered the § 3553(a) factors. Indeed, it expressly declined to reduce Akridge's sentence in light of his "extensive and severe criminal history," "the serious conduct underlying his current convictions," and his eleven disciplinary sanctions post-sentencing. R. 159, Pg. ID 696. These findings were sufficiently detailed for appellate review, and the district court wasn't required to consider *Havis* or *Cordero* at the § 3553(a) stage. So Akridge failed to meet his burden here too.

In sum, even if we were to review his invited error, Akridge's objections wouldn't survive plain-error review.

\* \* \*

We affirm.