NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0242n.06

Case No. 23-5898

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>KENTUCKY INDUSTRIAL HEMP, LLC, et al.,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiffs - Appellees,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE EASTERN DISTRICT OF</td></tr>
<tr><td>TETERBORO PARTNERS, LLC, et al.,</td><td>)</td><td>KENTUCKY</td></tr>
<tr><td>Defendants - Appellants.</td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Jun 05, 2024
KELLY L. STEPHENS, Clerk

BEFORE:  COLE, GRIFFIN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.**  Producers of hemp products signed a contract with Teterboro Partners to facilitate the producers' sales efforts.  Teterboro believes the producers owe it commissions allegedly earned when pharmacy giant CVS became a customer of the producers following an introduction by Teterboro.  At summary judgment, the district court held that Teterboro could not demonstrate a direct link between Teterboro's efforts and CVS's eventual purchases.  Teterboro challenges that ruling on appeal.  But the primary arguments it makes conflict with the position it took in the district court.  As a result, our preservation rules foreclose Teterboro's new position.  Seeing no other error, we affirm.

I.

Teterboro Partners, LLC, Chief Ventures, LLC, and Mr. Nice Guy, Inc. (collectively Teterboro) are businesses that have sought to capitalize on the legalization of hemp-based products

in the United States. Pursuing one such opportunity, Teterboro contacted Ecofibre Limited, an Australia-based hemp and biotechnology company, to discuss how Teterboro could help introduce Ecofibre's subsidiaries to prospective customers in North America. Executives from Teterboro and two of Ecofibre's subsidiaries, Kentucky Industrial Hemp, LLC and Ananda Hemp, Inc. (collectively Ananda), eventually executed a contract. In exchange for Teterboro agreeing to introduce Ananda to potential customers, Ananda agreed to pay Teterboro commissions for those introductions that resulted in new Ananda customers.

In October 2018, Teterboro set up a meeting between Courtney Hopkins, a senior employee of CVS, and Eric Wang, Ananda's Managing Director. During their meeting, Wang and Hopkins considered ways the two companies might collaborate, and they remained in contact via email for several months. Wang later introduced Hopkins to Ananda's chief revenue officer, whom Hopkins met with during an industry conference. Communications between Hopkins and Ananda died out, however, and Hopkins never purchased Ananda products for CVS.

In early 2019, Laurie Clark, a non-Teterboro employee who was also working on behalf of Ananda, contacted Hopkins to discuss a customer relationship with Ananda. Hopkins mentioned that she had already been introduced to the company by Teterboro. Despite her positive impressions of Ananda and its employees, Hopkins told Clark that she was not presently considering buying Ananda products for CVS.

In late 2018, Clark introduced Ananda to CVS's Private Label group, which operated independently from Hopkins's team. Private Label was headed by Brenda Lord, who had known Clark for twenty years. Clark facilitated a meeting between Lord and Ananda executives. After the meeting, CVS included Ananda in a year-long competitive bid process, ending in early 2020. At that point, CVS selected Ananda as a supplier of various hemp-based products.

Meanwhile, in the spring of 2019, Ananda sent Teterboro a notice of its intent to terminate their contract, effective December 1, 2019. A few months later, Ananda filed suit in Kentucky state court, seeking a declaratory judgment regarding its obligations under the agreement. Teterboro removed the suit to federal court and asserted several counterclaims. Relevant here, Teterboro argued that Ananda breached the terms of their agreement by failing to pay commissions associated with Ananda's sales to CVS.

Ananda moved for summary judgment on Teterboro's contract claim. The district court denied Ananda's motion, and the parties began preparing for trial. During a pretrial conference, the district court understood the parties to be in agreement that Teterboro would be entitled to commissions only if it could prove that its introduction "directly [led] to a sale" to CVS. R.68 PageID 1394. To the district court's eye, this reading of the contract was narrower than Teterboro's prior breach of contract theory. *Id.* So the district court concluded that it would be prudent to modify its scheduling order and allow additional motions for summary judgment.

Accordingly, Ananda again moved for summary judgment. Among Ananda's arguments was that under the terms of the parties' contract, Teterboro was entitled to a commission only if its introduction directly resulted in Ananda's sales to CVS. Teterboro opposed the motion. But it never disputed that its breach of contract theory depended upon its ability to prove that its introduction directly led to sales. The district court granted the motion and entered judgment for Ananda, concluding that Teterboro failed to proffer evidence upon which a reasonable jury could conclude that Teterboro's actions directly resulted in sales of Ananda products to CVS. In granting the motion, the district court emphasized Teterboro's "stated understanding [of] the agreement," which "required an introduction that directly led to sales . . . for Teterboro to receive commissions." R.80 PageID 2117.

Teterboro filed a Rule 59(e) motion to alter or amend the judgment. Relevant here, it argued that to be entitled to a commission, Teterboro only needed to introduce Ananda to someone who subsequently became a customer, even if a sale was not the direct result of the introduction. The district court denied the motion, noting that Teterboro's position was "inconsistent with its representations to the Court at the pretrial conference," and thus was unpreserved. R.89 PageID 2237–38. This timely appeal followed.

II.

A. Teterboro's primary argument on appeal is that the district court erred by adopting a "directness" requirement between Teterboro's actions and CVS's purchase of Ananda's products. In district court, however, Teterboro either waived the argument or invited the alleged error.

1. As an appellate court, we are "a court of review, not of first view." *Byrd v. Haas*, 17 F.4th 692, 700 (6th Cir. 2021) (citation omitted). To honor that understanding, we apply three related safeguards: the forfeiture rule, the waiver rule, and the invited error rule. All three serve to limit a litigant's ability to raise on appeal an issue the litigant failed to preserve previously.

Beginning with forfeiture, a party forfeits an issue by failing to timely assert it, "even if the party does so unintentionally." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). In the event of a forfeiture, we will entertain the argument on appeal only in "exceptional situations." *Id.* at 1012 (cleaned up) (citation omitted). Waiver, on the other hand, "occurs when a party intentionally abandons a known right." *Id.* at 1011. When that occurs, we will not consider the waived argument on appeal, regardless of any unique circumstance. *Id.* (collecting cases). Invited error falls somewhere in between the two. It has been described as "a branch of waiver." *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021). "A litigant invites error when he contributes in some way to the district court's error without intentionally

relinquishing his rights." *Id.*; *see also Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 61 (6th Cir. 1991) (discussing invited error in civil cases). "[T]he doctrine of invited error prevents a party from inducing a court to follow a course of conduct and then[,] at a later stage of the case[,] using the error to set aside the immediate consequences of the error." *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1072 (6th Cir. 2014) (cleaned up).

Forfeiture, waiver, and invited error operate on a "continuum," with forfeiture occupying one end of the "spectrum," and waiver the other. *Montgomery*, 998 F.3d at 697–98. The lines separating these doctrines can be "hazy," and our cases differentiating the three admittedly "are not a model of clarity." *Id.* But in most cases, especially those in which the appellant has declined to argue that exceptional circumstances warrant review of an unpreserved argument, the differences are largely irrelevant. *See United States v. Akridge*, 62 F.4th 258, 263–64 (6th Cir. 2023).

Here, Teterboro failed to preserve the primary contract interpretation argument it advances on appeal. At multiple stages in the district court proceedings, Teterboro either agreed with or failed to contest that Teterboro was entitled to commissions only from introductions that directly led to sales.

Start at the parties' pretrial conference before the district court. There, Teterboro agreed that it was entitled to commissions only where a customer introduction directly resulted in a sale:

> **The Court:** I have a question. If your client can only introduce people and that introduction does not directly lead to sales, your client has no right to recover commissions; is that correct?
>
> **Teterboro:** That is correct. Our argument is that there is a factual dispute over whether our introduction directly led to the sales here.

R.84 PageID 2182. The district court followed up as to whether the parties had a mutual understanding of the contractual terms. Explaining that the court "need[ed] to get this down narrowly" so that it could "know what [the] jury ha[s] to decide," *id.* at 2183, the court confirmed that the parties read the contract as requiring commissions only from introductions that directly led to sales.

> **The Court:** So you agree on what is required for performance, that it must be an introduction that leads to a sale, and there's no dispute about that; is that correct?
>
> **Ananda:** That directly leads to a sale.
>
> **The Court:** I understand, yes. And you agree with that as well, [Counsel for Teterboro]?
>
> **Teterboro:** No dispute about that; we agree.
>
> **The Court:** Okay. Because as I was reading this, I didn't quite understand it. It appeared more to me that [Teterboro] was claiming . . . that no sale had to be related just because it had completed performance by making an introduction.
>
> **Teterboro:** No, Your Honor, that's not our position at all.

*Id.*

The district court and the parties acted accordingly. In an order issued immediately after the pretrial conference, the district court noted that "both parties agreed at the pretrial conference that there must be an introduction that directly leads to a sale in order for Defendants to be entitled to a commission." R.68 PageID 1394. The court then permitted the parties to submit a second round of summary judgment motions. In so moving, Ananda stated that under the contract, "sales of Ananda's products had to directly result from Teterboro's introduction in order for a commission to be owed." R.70 PageID 1409 (cleaned up). For support, it referred to "Teterboro's pre-trial concession, memorialized in" the district court's recent order. *Id.* Ananda described this reading as a "critical limitation" of the contract's terms, suggesting it would be absurd to read the

contract as requiring a commission when an introduction did not directly lead to a sale. *Id.* And, Ananda explained, Teterboro was not entitled to a commission here because none of Ananda's sales to CVS resulted directly from Teterboro's introduction. *Id.* at PageID 1415, 1419. Teterboro, for its part, never sought to correct the district court's understanding nor challenged Ananda's direct sales argument in opposing summary judgment. Instead, it waited until its Rule 59(e) motion to raise a different contract-based argument.

How should we treat Teterboro's actions? In one sense, its statements during the pretrial conference look a lot like a waiver. A party waives an argument by intentionally abandoning it. *Bannister*, 49 F.4th at 1011 (finding waiver when parties explicitly stated that they "do not argue" that the district court wrongly dismissed a claim). And litigants can waive claims by explicitly agreeing with the district court's proposed course of conduct. *United States v. Carter*, 89 F.4th 565, 568–69 (6th Cir. 2023). Arguably, Teterboro did just that: it agreed that it must prove a direct connection between an introduction and subsequent sale. Teterboro's counsel stated during the pretrial conference that Teterboro was entitled to commissions only if it could prove that a specific customer introduction directly led to sales. The district court asked whether Teterboro's breach of contract claim was broader—if it was entitled to compensation merely because "it had completed performance by making an introduction" to a customer, without showing any direct link between the introduction and subsequent sales. R.84 PageID 2183. Teterboro responded that this broader claim was "not [Teterboro]'s position at all." *Id.* Taken together, this conduct reflects many hallmarks of waiver.

On the other hand, we might treat Teterboro's statements and subsequent silence on the issue as invited error, which we can do sua sponte. *Carter*, 89 F.4th 565 at 568. With respect to invited error, consider our decision in *Bayer*. During a case management conference, the plaintiffs

"agreed in open court with the district court's framing of the case as a single-issue case." 752 F.3d at 1073. And the plaintiffs did not object to the court's case management order, which treated the case as such. *Id.* at 1069, 1073. Yet once the defendants moved for summary judgment, the plaintiffs changed course, arguing that the district court erred by treating "plaintiffs' four claims as really constituting only one claim." *Id.* at 1072. From this course of conduct, we concluded that the plaintiffs invited any error stemming from the district court's framing of the case and related orders. *Id.* at 1072–74. Accordingly, we declined to entertain the plaintiffs' unpreserved arguments. *Id.* at 1073–74.

Like the plaintiffs in *Bayer*, Teterboro similarly agreed with the district court's framing of the case. When the court memorialized that understanding in its order reopening summary judgment, Teterboro made no objection. Nor (unlike even the plaintiffs in *Bayer*) did Teterboro contest the issue during summary judgment briefing. Rather, it waited until its Rule 59(e) motion to do so, a position it reiterates on appeal. Teterboro may not challenge "the so-called error [it] induced the district court to make." *Bayer*, 752 F.3d at 1073 (quoting *Harvis*, 923 F.2d at 61–62) (cleaned up). Otherwise, Teterboro could advance a broader breach of contract theory on appeal than it did unsuccessfully in the district court, leaving Teterboro potentially to "profit from the legal consequences of having the ruling set aside." *Harvis*, 923 F.2d at 61.

At day's end, we need not decide where Teterboro's conduct below "falls on the 'hazy border' between waiver and invited error." *Carter*, 89 F.4th at 569–70 (quoting *Montgomery*, 998 F.3d at 698). We do not review waived arguments. As to invited error, in criminal cases we review the error only if the inviting party shows that failing to do so "would result in manifest injustice." *Akridge*, 62 F.4th at 264 (citation omitted). Our precedent suggests, albeit in a different context, that the same may be true in civil cases. *See Fryman v. Fed. Crop Ins.*, 936 F.2d 244, 251 (6th

Cir. 1991). Even then, by declining to "even mention" in its appellate briefing whether the alleged error here amounts to manifest injustice, Teterboro has failed to demonstrate as much. *Akridge*, 62 F.4th at 264. Accordingly, under either theory, Teterboro has failed to preserve its counter arguments regarding the proper reading of the contract.

What is more, Teterboro's conduct suffers from a related flaw: it raised its new position for the first time in its Rule 59(e) motion to alter or amend the judgment. But Teterboro may not "use a Rule 59 motion . . . 'to raise arguments which could, and should, have been made before judgment issued.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). Arguments raised at such a late stage are also typically deemed unpreserved on appeal. *See, e.g.*, *Everly v. Everly*, 958 F.3d 442, 449 (6th Cir. 2020).

2. Teterboro offers several responses, none of which persuade. First, it suggests that we should ignore its statements during the pretrial conference because the proper interpretation of a contract is a question of law, and judicial admissions cover only factual questions. True, "judicial admissions typically concern only matters of fact." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007) (cleaned up) (citation omitted). Yet that fairly describes Teterboro's conduct in the district court. Teterboro conceded that the relevant "factual dispute [was] whether [Teterboro's] introduction directly led to the sales [to CVS,]" thereby simplifying its breach claim to focus on certain facts. R.84 PageID 2182. In other words, this is not a case in which the district court accepted as law the opinions of the parties. Rather, it is one in which Teterboro voluntarily narrowed the scope of its claim. *See Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004) (holding that a judicial admission can "release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law"). Through

its concessions, Teterboro thus directed the court's attention to the factual considerations relevant at summary judgment and trial.

The pretrial conference, it bears adding, was an especially appropriate time to do so. Consider the circumstances of a Rule 16 conference. There, a district court "may consider and take appropriate action" to "formulat[e] and simplify[] the issues, and eliminate[] frivolous claims or defenses." Fed. R. Civ. P. 16(c)(2)(A). Indeed, that is a primary reason district courts hold pretrial conferences, and the district court here deserves credit for using the conference to narrow the case properly. For the parties, a "failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000); *see also United States v. Hougham*, 364 U.S. 310, 315 (1960) (noting that a "pretrial order, as authorized by Rule 16, conclusively established the issues of fact *and law* in the case" (emphasis added)). Recall *Bayer*, where we declined to entertain the plaintiffs' arguments alleging that the district court improperly applied the summary judgment standard and failed to address the entirety of their claims. 752 F.3d at 1072–74. Any error, we concluded, was invited by the plaintiffs' framing of the legal issues in the case and acquiescence to the district court's case management plan. *Id.* It did not matter that some of the invited errors were based in law rather than fact.

Teterboro next directs us to Ananda's conduct, emphasizing that Ananda never argued that the contract language limited commissions to instances where Teterboro demonstrated a direct link between its introduction and subsequent sales. Ananda's summary judgment motion, we agree, focused primarily on issues of Kentucky law, with only a handful of references to the "directly lead to sales" argument. In a vacuum, perhaps Teterboro would have a point. But all of this came against the backdrop of the Rule 16 conference. And Teterboro's silence following the district court's post-conference order and Ananda's framing of the issue at summary judgment surely

reaffirmed the district court's understanding of the relevant contours of Teterboro's breach claim. *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1527 (3d ed. 2024) (noting that during a Rule 16 pretrial conference, "the court may require the parties to reveal the theories underlying their claims or defenses"); *cf. Smith v. Gulf Oil Co.*, 995 F.2d 638, 643–44 (6th Cir. 1993) (holding that the district court properly exercised its authority under Rule 16 to simplify the issues at trial by excluding one of plaintiff's specific theories of recovery after counsel never demonstrated a "serious" or "earnest" intent to advance such a claim at trial). In other words, Teterboro's silence bolstered the district court's belief that Teterboro's theory of the case was consistent with its prior representations to the court. We therefore decline to address Teterboro's belated contract arguments.

B. Even if the district court properly framed the parties' disagreement, Teterboro contends that material issues of fact still preclude summary judgment. Specifically, it asserts that a reasonable fact finder could conclude that Ananda's sales to CVS were the direct result of Teterboro's introduction. We disagree.

Teterboro introduced Ananda to Hopkins in October 2018. Although Hopkins communicated with Ananda executives over the next few months, she ultimately decided not to purchase products from Ananda on behalf of CVS. A few months later, Clark, a non-Teterboro employee, introduced Ananda to Lord, the leader of a separate CVS division. Lord testified that up to that point, she had not heard of Ananda.

The undisputed record, in other words, reflects two separate lines of communication between CVS and Ananda. One was facilitated by Teterboro and concluded when Hopkins declined to purchase Ananda's products. The other was facilitated by an agent unaffiliated with Teterboro, eventually resulting (through Lord) in a purchase agreement. Teterboro has not

11

identified any evidence revealing an overlap between these two lines of communication from which a reasonable juror could conclude that Teterboro's introduction directly resulted in sales to CVS.

Seeing things differently, Teterboro asserts that its introduction of Ananda to Hopkins was a "foot in the door to gather valuable information." On that basis, the company adds, a reasonable fact finder could conclude that "Teterboro's introduction resulted in CVS's positive exposure to Ananda and ultimately set the chain of events in place that led to Ananda's sales to CVS." This argument, however, misconstrues the contract's terms as understood by the district court and the parties. To be entitled to a commission, Teterboro's introduction must have directly resulted in sales to CVS. That a non-decision-making CVS executive may have had a positive impression of Ananda following Teterboro's introduction simply does not demonstrate that sales years later were the direct result of the earlier introduction. Without evidence of a direct causal link between Teterboro's introduction and the eventual sales of Ananda products to CVS, Teterboro's claim fails as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

\* \* \* \* \*

We affirm the judgment of the district court.

12