RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

IDRIS QUINTELL WILKES,

        *Defendant-Appellant*.

> No. 22-1436

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cr-00042-1—Janet T. Neff, District Judge.

Argued: January 12, 2023

Decided and Filed: April 1, 2025

Before: STRANCH, MURPHY, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## SUCCESSIVE OPINION

─────────────────

DAVIS, Circuit Judge. Defendant Idris Quintell Wilkes pleaded guilty to being a felon in possession of a firearm. He received the mandatory minimum sentence of fifteen years' imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), based on

the district court's determination that his four previous cocaine-related Michigan convictions met the definition of a "serious drug offense."  We affirmed the decision of the district court in part and held the appeal in abeyance in part, retaining jurisdiction to later resolve Wilkes's remaining ACCA-enhancement challenge in light of the Supreme Court's grant of certiorari in *Jackson v. United States*, No. 22-6640 (U.S. Jan. 24, 2023), *consolidated with Brown v. United States*, No. 22-6389 (U.S. Aug. 29, 2022).  *See United States v. Wilkes*, 78 F.4th 272, 278 (6th Cir. 2023).  The Court has since issued its opinion in *Brown v. United States*, 602 U.S. 101 (2024).  And applying *Brown*'s guidance here, we affirm the district court's ruling.

I.

Wilkes's appeal raised two challenges to his armed career criminal designation, both targeting the district court's designation of his Michigan cocaine-related offenses as serious drug offenses.  First, Wilkes argued that Michigan's law includes [$^{123}$I]ioflupane in its definition of cocaine and federal law does not.  Second, he argued that Michigan's law includes all the stereoisomers of cocaine and federal law does not.  So, when applying the categorical approach under the ACCA, says Wilkes, his prior Michigan drug convictions should not count as predicate serious drug offenses triggering the ACCA mandatory minimum.  We resolved Wilkes's second challenge against him in our earlier decision, concluding that the meaning of the term "optical and geometric isomers" in the Controlled Substances Act is coextensive with the cocaine stereoisomers covered by Michigan law.  *See Wilkes*, 78 F.4th at 285.  That leaves Wilkes's first challenge for our resolution.

II.

The ACCA provides that if a defendant convicted under 18 U.S.C. § 922(g) has three previous convictions for a "serious drug offense," he is subject to a mandatory minimum sentence of fifteen years' imprisonment.  18 U.S.C. § 924(e)(1).  The ACCA defines a serious drug offense by cross-referencing the Controlled Substances Act (21 U.S.C. § 801 *et seq.*).  *Id.* § 924(e)(2)(A).  Courts use the categorical approach to determine whether a state law offense meets this definition—i.e., to discern whether the state criminalizes as "controlled substances" no more than the same substances criminalized as such by federal law.  *See Shular v. United*

*States*, 589 U.S. 154, 157–58 (2020).  Under this approach, "we identify the conduct that was criminalized under the state law of conviction; then, we evaluate that relevant conduct as defined in the [ACCA or the Sentencing] Guidelines; and finally, we 'overlay the two.'" *United States v. Clark*, 46 F.4th 404, 408 (6th Cir. 2022) (quoting *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020)); *United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (en banc).  "A state drug offense counts as an ACCA predicate only if the State's definition of the drug in question 'matche[s]' the definition under federal law."  *Brown*, 602 U.S. at 106 (alteration in original) (quoting *Shular*, 589 U.S. at 158).  If the state law criminalizes more conduct than the federal law does, then the state conviction cannot count as a sentencing-enhancement predicate.  *Wilkes*, 78 F.4th at 277 (citing *Burris*, 912 F.3d at 406).

Wilkes's remaining challenge is essentially one based on timing.  When Wilkes was convicted of his four cocaine-related offenses,[1] both Michigan law and federal law included [$^{123}$I]ioflupane as a controlled substance.  Wilkes does not dispute that, if we look at the statutes as they existed at the time of his Michigan convictions, the state and federal definitions match, and his state convictions should be considered "serious drug offenses."  But, by the time of Wilkes's federal sentencing, [$^{123}$I]ioflupane had been specifically removed from the federal controlled-substance schedules.[2]  The substance remained outlawed by Michigan.  This means, according to Wilkes, that Michigan law sweeps more broadly than federal law, so his cocaine convictions cannot serve as ACCA predicates.  The district court dismissed this argument.  Relying on the realistic probability test from *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), the district court found "no realistic probability that Mr. Wilkes'[s] Michigan convictions were in any way based on Ioflupane."[3]  (Sentencing Tr., R. 89, PageID 1109).  Then, after considering

---

[1]Wilkes's relevant prior convictions were: (1) 1994 delivery of cocaine; (2) 1994 possession with intent to deliver less than fifty grams of cocaine; (3) 2006 delivery or manufacture of less than fifty grams of a controlled substance; and (4) 2007 delivery or manufacture of less than fifty grams of a controlled substance.

[2]The federal government legalized [$^{123}$I]ioflupane in 2015.  *See* Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane From Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715-01, 54717 (Sept. 11, 2015) (to be codified at 21 C.F.R. pt. 1308).

[3]This reasoning is incorrect.  Under the categorical approach, "we look 'only to the statutory definitions of the prior offenses.'"  *Shular*, 589 U.S. at 157 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  We do not consider "the particular facts underlying the [defendant's] prior convictions."  *Id.* (quoting *Mathis v. United States*, 579 U.S. 500, 510–11 (2016)).  The question is solely whether the statute under which the defendant was convicted in state court covered only conduct that would be criminalized under the relevant federal laws.  Thus, it

Wilkes's optical-and-geometric-isomers argument, the court found "that the Federal and Michigan statutes are, at this time of the sentencing of the Defendant, categorically the same." (*Id.* at 1111).

Wilkes has reprised his [[123]I]ioflupane-based argument on appeal, and we review the district court's decision de novo. *United States v. Mateen*, 764 F.3d 627, 630 (6th Cir. 2014) (en banc) (per curiam). At oral argument before this court, Wilkes seemed to shy away from this argument, assuming our decision in *United States v. Clark*—which considered the timing question under the analogous language in the United States Sentencing Guidelines ("U.S.S.G.") rather than the ACCA—foreclosed his argument. *See* 46 F.4th at 408. In *Clark*, we determined that, when considering whether a prior state offense should count as a predicate under the career-offender enhancement found in U.S.S.G. § 4B1.1(a), courts must look at federal and state law as each existed at the time of the defendant's state conviction to assess whether that conviction qualifies as a "crime of violence" or a "controlled substance offense." *Id.* at 408–09. And Wilkes made no attempt to distinguish *Clark*.

Instead, Wilkes asked that we defer ruling on this case until the Supreme Court issued its decision in *Jackson v. United States*, and, with it, *Brown v. United States*. Those cases asked the Court "whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed." *Brown*, 602 U.S. at 106. If the Court determined that the later removal of a drug from the federal schedules prevented a defendant's state conviction from counting as a "serious drug offense,"

---

does not matter whether there was a reasonable probability that Wilkes's alleged predicate convictions were based on [[123]I]ioflupane. Even if an examination of the state court record demonstrated that they were not, that fact would not answer the pertinent question under the categorical approach. *Duenas-Alvarez* does not change this conclusion. *Duenas-Alvarez* involved a dispute about the scope of the state law. 549 U.S. at 190. The defendant argued that state courts interpreted the state offense in such a way as to reach conduct beyond the federal offense. *Id.* at 190–91. Because the plain text of the state statute did not cover the conduct the defendant claimed it did, the Supreme Court indicated that the defendant would need to look to state caselaw to demonstrate a reasonable probability that the state would apply its statute as the defendant suggested. *Id.* at 193. In other words, *Duenas-Alvarez* used reasonable probability as a tool to determine the sweep of state law before comparing the scope of the state law to the scope of the federal law. Nowhere did *Duenas-Alvarez* give the federal courts license to bypass the categorical approach and look to the particular facts underlying the defendant's state convictions (whether established by reasonable probability or otherwise). Nonetheless, as will be discussed below, Wilkes arguments fail for other reasons, so we affirm on different grounds.

Wilkes argued, then he would not have sufficient offenses to qualify him for the ACCA's enhancement.

In the end, the Supreme Court did not decide *Brown* as Wilkes had hoped. Instead, the Court held that a "state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." *Id.* at 123. The Court discussed three competing theories for determining ACCA classification: reference to the federal controlled-substance schedules in effect at (1) the time of the defendant's prior state offense; (2) the time of the federal offense for which the defendant is being sentenced; or (3) the time of the defendant's federal sentencing. *Id.* at 108–10.

One of the defendants, Jackson—arguing the second theory—maintained that his prior convictions were not "serious drug offense[s]" because an intervening change in federal law created a mismatch between the state and federal definitions of cocaine. *Id*. at 107–08. Jackson argued that when his prior crimes were committed, "the Federal Government and Florida defined cocaine the same way." *Id.* at 107 (citing 21 U.S.C. § 812(c), Schedule II, (a)(4); Fla. Stat. §§ 893.03(2)(a)(4), 893.13(1) (1998)). However, when Jackson committed his federal offense in 2019, the "federal and Florida definitions were no longer a categorical match" because the federal government had since legalized [123]I]ioflupane—the same substance relevant here. *Id*. at 108 (citing Schedules of Controlled Substances: Removal of [123]I]Ioflupane From Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715-01, 54717 (Sept. 11, 2015) (to be codified at 21 C.F.R. pt. 1308)). Thus, Jackson contended that the Court should vacate his sentence. *Id*.

Brown argued the third theory. *Id.* at 110. At the time of Brown's state conviction, "both federal and Pennsylvania law defined marijuana to include 'all parts of the plant Cannabis sativa L.,' so the definitions were a categorical match." *Id.* at 106–07 (citing 21 U.S.C. § 802(16) (2006); 35 Pa. Cons. Stat. § 780–102(b) (2012)). But before Brown's sentencing, Congress amended the federal definition of cannabis to exclude some hemp. *Id.* at 107. So, because "the federal and state definitions did not fully match when Brown was sentenced," Brown similarly asked the Court to vacate his sentence. *Id.*

The Court rejected both arguments in favor of the Government's interpretation (the first theory) because it better adhered to the ACCA's "statutory objectives." *Id.* at 113. The Court acknowledged that Congress intended to single out "offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders." *Id.* (quoting *Taylor*, 495 U.S. at 590). Thus, the Court reasoned that because a defendant's "history of criminal activity does not cease to exist merely because the crime was later redefined," *id.* at 113–14 (internal quotation marks and citation omitted), it made the most sense to determine "whether a prior offense met ACCA's definition of seriousness—and thus suggested future danger—at the time it was committed," *id.* at 114.

We turn then to Wilkes's argument on appeal. Wilkes contends, like Brown did, that a sentencing court should apply the ACCA "as it reads" at the time of federal sentencing. (ECF 11, Appellant's Br. at 19). In other words, Wilkes urges us to conclude that "if the federal authorities narrow the definition of a drug at any point before sentencing, the prior convictions no longer count as ACCA predicates." *Brown*, 602 U.S. at 110. But the Supreme Court explicitly rejected this argument and adopted a time-of-offense rule instead. *See id.* at 123. Wilkes's Michigan convictions for the delivery or manufacture of cocaine from 1994, 2006, and 2007 do not "'cease to exist' merely because the crime was later redefined." *Id.* at 113–14 (quoting *McNeill v. United States*, 563 U.S. 816, 823 (2011)). Most importantly, Wilkes committed the offenses underlying his Michigan convictions before the 2015 removal of [123I]ioflupane from the federal controlled-substance schedules. And Wilkes does not dispute that, at the time of his state offenses, Michigan and federal law coterminously defined cocaine-related controlled substances. Accordingly, because Michigan's definition of cocaine matched the definition contained in the federal drug schedules at the time of his offenses, Wilkes's Michigan cocaine convictions count as "serious drug offenses" under the ACCA.

III.

For these reasons, we AFFIRM the district court's decision to reject Wilkes's argument that the ACCA enhancement does not apply because [123I]ioflupane is no longer criminalized under federal law.