RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

PRINCE IRELL SEUELL,

*Defendant-Appellant*.

No. 24-1764

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cr-00162-1—Paul Lewis Maloney, District Judge.

Decided and Filed: April 24, 2025

Before: SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant. John J. Schoettle, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

SUTTON, Chief Judge. Police pulled over Prince Irell Seuell and discovered drugs, a semiautomatic pistol, and an outstanding warrant. Seuell pleaded guilty to possessing a firearm as a felon. In this appeal, he challenges his conviction and 70-month sentence. We affirm.

I.

In November 2023, police stopped Seuell in Van Buren County, Michigan, and arrested him upon discovering an outstanding warrant.  After officers impounded the vehicle, they searched a backpack recovered from the front passenger seat and found cocaine, fentanyl, clear sandwich bags, identification cards bearing various names, multiple cell phones, and a loaded semiautomatic pistol.  Hidden under the driver's seat in a grocery bag were several grams of a heroin/fentanyl mixture in separate sandwich baggies and some cocaine.

Seuell and the government reached a plea deal.  He pleaded guilty to possessing a pistol, and the government dropped the drug distribution charge.  The presentence report calculated a Guidelines range of 70 to 87 months.  The district court sentenced Seuell to 70 months.

II.

A.

Seuell claims that the felon-in-possession statute violates the Second Amendment as applied to him.  But he waived this argument below.

Waiver is "the intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation omitted).  A defendant waives an argument when he "agree[s] in open court with a judge's proposed course of conduct."  *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quotation omitted); *see United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021) (amended opinion).  We do not review waived arguments because "the waiving party has conceded that there is no error."  *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023).

Seuell waived this argument at sentencing.  Seuell understood that he could challenge his sentence on Second Amendment grounds.  That is why he asked his attorney to file a "motion to dismiss the indictment" because § 922(g) was "unconstitutional as it applies to [him]."  R.69 at 5.  When his attorney refused, the court offered to appoint new counsel who might file the motion.  Seuell responded that he did not "want to cause problems" or "have to go through a third attorney and have to file the motion."  R.69 at 7.  The court then told Seuell not to "worry

about causing problems" and reiterated the offer: "Do you want to proceed to sentencing without the motion being filed, or do you want another lawyer to file—potentially file the motion for you? Which do you want?" R.69 at 7–8. Seuell answered, "I guess we can proceed, Your Honor." R.69 at 8. Again, the district court asked, "You want to proceed with sentencing today?" R.69 at 8. Seuell confirmed, "Yes, sir." R.69 at 8. The district court gave Seuell multiple chances to advance his Second Amendment argument, and Seuell gave the district court multiple assurances that he wanted to proceed without raising the motion. This waiver binds him.

Seuell insists that he did not knowingly waive this challenge because he was unaware that he could protest his dangerousness under *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), a case decided the week before the sentencing hearing. But the transcript makes clear that the *Williams* decision was a significant factor in the district court's colloquy with Seuell. And a waiver is valid so long as a defendant knows the "nature of the right and how it would likely apply *in general* in the circumstances." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A defendant need not know each possible defense or strategy that he forgoes by waiving a constitutional right. *See United States v. Broce*, 488 U.S. 563, 573 (1989). Seuell understood that his challenge involved an individualized inquiry, as he thought about challenging his conviction as "unconstitutional as it applies to [him]." R.69 at 5. He also understood the effect of such a challenge. It would result in dismissal of the indictment. And the district court informed Seuell that he needed to raise the motion to preserve it on appeal. No more is required for a valid waiver.

Seuell also faults his counsel for failing to inform him that he could challenge his dangerousness. But he did not bring an ineffectiveness claim here. He is free to do so in post-conviction proceedings. *See United States v. Meeker*, 411 F.3d 736, 748–49 (6th Cir. 2005).

B.

In challenging his sentence, Seuell targets the base offense level set by the presentence report. The relevant Guideline sets the offense level at 22 if the defendant previously committed a "crime of violence" and used a qualifying gun (such as a "semiautomatic firearm that is

capable of accepting a large capacity magazine") while committing the present offense. U.S.S.G. § 2K2.1(a)(3). Seuell accepts that his prior assault qualifies as a violent crime. And he accepts that his pistol's magazine qualifies as a "large capacity magazine." He claims instead that the enhancement does not apply because he did not know that his pistol could carry enough ammunition to count as accepting a large capacity magazine.

We disagree. The provision, as an initial matter, does not contain a state-of-mind requirement. It requires an enhancement whenever the firearm qualifies.

That silence takes on added weight when accompanied by the reality that the Sentencing Commission knew how to add a state-of-mind requirement when it wished to do so. The adjacent provision and eight others in the same Guideline specify a particular state of mind. *See* U.S.S.G. § 2K2.1(a)(4)(B)(ii) ("with knowledge, intent, or reason to believe"), (a)(6)(C) ("with knowledge, intent, or reason to believe"), (b)(4)(B)(ii) ("knew . . . or was willfully blind to or consciously avoided knowledge of such fact"), (b)(5)(B)(i) ("knowing or having reason to believe"), (b)(5)(C)(i) ("knowing or having reason to believe that such conduct would result"), (b)(6)(A) ("with knowledge, intent, or reason to believe"), (b)(6)(B) ("with knowledge, intent, or reason to believe"), (b)(8)(B) ("knowing or acting with willful blindness or conscious avoidance of knowledge"), (c)(1) ("with knowledge or intent"). When the Commission "includes particular language in one section of a [Guideline] but omits it in another section of the same" Guideline, we should respect its decision. *Bates v. United States*, 522 U.S. 23, 29–30 (1997) (quotation omitted).

We have rejected similar arguments before. In *United States v. Palos*, we held that the stolen-firearm enhancement did not require a showing that the defendant knew that the firearm was stolen. 978 F.3d 373, 375–77 (6th Cir. 2020) (citing U.S.S.G. § 2K2.1(b)(4)). And we described a related firearm enhancement that lacked a state-of-mind element as a "[s]trict liability enhancement." *United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020).

We are not alone in reaching this conclusion. Every circuit to interpret this provision has recognized that it does not contain a state-of-mind requirement. *United States v. Fry*, 51 F.3d 543, 546 (5th Cir. 1995); *United States v. Cherry*, 855 F.3d 813, 817 (7th Cir. 2017); *United*

*States v. Ness*, No. 21-2161, 2022 WL 3652474, at *1 (8th Cir. Aug. 25, 2022) (per curiam) (unpublished). That reflects a broader consensus to decline to "read scienter elements into guidelines where the Sentencing Commission has not provided them." *United States v. Miller*, 11 F.4th 944, 956 (8th Cir. 2021) (quotation omitted); *see also United States v. Lam Kwong-Wah*, 924 F.2d 298, 304 (D.C. Cir. 1991) ("[U]nder the amended Guidelines, scienter is not required as a general matter.") (§ 1B1.3); *United States v. González*, 857 F.3d 46, 53–56 (1st Cir. 2017) (§ 2K2.1(b)(4)); *United States v. Thomas*, 628 F.3d 64, 68–69 (2d Cir. 2010) (§ 2K2.1(b)(4)); *United States v. Thornton*, 306 F.3d 1355, 1358–59 (3d Cir. 2002) (§ 3B1.4); *United States v. Taylor*, 659 F.3d 339, 344 (4th Cir. 2011) (§ 2K2.1(b)(4)(A)); *United States v. Gonzalez*, 262 F.3d 867, 870 (9th Cir. 2001) (per curiam) (§ 3B1.4); *United States v. Ray*, 704 F.3d 1307, 1311–12 (10th Cir. 2013) (order) (§ 2G2.2(b)(3)(F)); *United States v. McClain*, 252 F.3d 1279, 1285 (11th Cir. 2001) (§ 3B1.4).

Seuell pushes back on the ground that, at common law, the courts tended to read a mens rea requirement into criminal laws, and American courts have accepted this background tradition in construing criminal statutes. Under English common law, he emphasizes, a crime required proof of a "vicious will." *Morissette v. United States*, 342 U.S. 246, 251 (1952) (quotation omitted). But this doctrine does not apply when interpreting Guidelines provisions because the defendant has already been convicted and thus has already demonstrated his "vicious will." That explains why the Supreme Court has described the canon as existing for "each of the statutory elements that criminalize *otherwise innocent conduct*." *Rehaif v. United States*, 588 U.S. 225, 228–29 (2019) (quotation omitted) (emphasis added); *see United States v. Burwell*, 690 F.3d 500, 538 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting, joined by Tatel, J.) (noting that "[t]he presumption of mens rea applies to elements of the offense, but not to sentencing factors," and doing so without contradiction by the majority, which rejected the presumption for both elements and sentencing factors). And it explains why we and our sister circuits have found "no basis for expanding" the canon to the "fundamentally distinct" area of "sentencing enhancements." *United States v. Murphy*, 96 F.3d 846, 848–49 (6th Cir. 1996); *United States v. Nava–Sotelo*, 354 F.3d 1202, 1207 (10th Cir. 2003); *United States v. Brantley*, 68 F.3d 1283, 1289–90 (11th Cir. 1995).

Take *Dean v. United States*, 556 U.S. 568 (2009). The Court held that a statutory sentencing enhancement for discharging a firearm during an armed robbery did not require a separate intent to discharge the weapon. *Id.* at 575–76. It contrasted the common law concern of punishing "the consequences of purely accidental conduct" with punishing "the unintended consequences of their *unlawful* acts." *Id.* at 575. In doing so, it noted that the Guidelines often enhance offense levels based on the consequences of the offense without requiring that the defendant intend that result. *Id.* In the end, the Court reasoned, the common-law rule did not apply because "the defendant [wa]s already guilty of unlawful conduct twice over: a violent or drug trafficking offense and the use, carrying, or possession of a firearm in the course of that offense." *Id.* at 576.

Seuell responds that our reading of the Guideline offends due process because, as the Supreme Court has said, "wrongdoing must be conscious to be criminal." *Ruan v. United States*, 597 U.S. 450, 457 (2022) (quotation omitted). But the Guidelines do not criminalize conduct; statutes do. *See United States v. Figuereo*, 404 F.3d 537, 541 (1st Cir. 2005) (collecting cases upholding other strict liability provisions). Nor do they increase the authorized penalty for Seuell's crime. All they do, ever since *United States v. Booker*, 543 U.S. 220 (2005), is guide a sentencing judge about how to exercise his discretion. *Id.* at 233. This reality distinguishes Seuell from the defendants in his cited cases, all of whom challenged their substantive liability for the underlying offense. *See, e.g.*, *Morissette*, 342 U.S. at 250–52; *Staples v. United States*, 511 U.S. 600, 606 (1994); *Rehaif*, 588 U.S. at 228–29; *Ruan*, 597 U.S. at 457; *Burwell*, 690 F.3d at 502.

Seuell argues that this reading conflicts with the imperative that a sentence should be "sufficient, but not greater than necessary," to comply with the purposes set out in 18 U.S.C. § 3553. But no conflict exists. Application of the Guideline does not dictate his sentence. It only informs the advisory Guideline range. The district court may give the range as much or as little deference as it wishes. *Gall v. United States*, 552 U.S. 38, 49–51 (2007). No error occurred.

C.

Seuell challenges the district court's enhancement for using a firearm in connection with another offense. Under the Guidelines, a four-level enhancement applies to a defendant who "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The government must show, by a preponderance of the evidence, a nexus between the defendant's firearm and a separate felony offense. *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019). We review the district court's factual findings for clear error. *United States v. Shields*, 664 F.3d 1040, 1043–44 (6th Cir. 2011).

The district court did not clearly err in finding that Seuell committed another felony offense. Heroin and fentanyl trafficking are felonies in Michigan. Mich. Comp. Laws § 333.7401(2)(a)(iv). Seuell conceded at the sentencing hearing that the amount of fentanyl and heroin in the car "could be indicative of sales" and involved more than "a user amount." R.69 at 13. In fact, according to a testifying officer, it amounted to 5,000 doses. Seuell also separately packaged the drugs, again suggesting he planned to distribute them. *See United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992) (per curiam).

The district court also did not clearly err in connecting Seuell's pistol to drug trafficking. The Guidelines commentary applies the enhancement when "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 cmt. n.14(B). Seuell had "ready access" to the pistol, which officers found "in close proximity to" the drugs and drug paraphernalia (in the same backpack as some of the drugs, baggies, and cell phones). *United States v. Angel*, 576 F.3d 318, 322 (6th Cir. 2009). The pistol was loaded and within Seuell's reach, allowing its ready use to defend his drug distribution. *Shanklin*, 924 F.3d at 921–92.

Seuell argues that the government failed to show by a preponderance that he trafficked drugs because there were "no cash proceeds, no drug conversations on his cell phone, no records of drug transactions, no observation of sales, and no information from third parties that he was selling drugs." Appellant's Br. 14. But Seuell cannot upstage what the government *did* show with what it *didn't* show. A district court does not clearly err when it infers an intent to

distribute based on circumstantial evidence. *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010). There was plenty of that here. Officers discovered lots of drugs (far more than one would use alone) and drug-distribution paraphernalia (unexplained plastic bags). *See United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004).

Seuell claims that the government failed to tie his pistol to any narcotics trafficking. But the proximity of the gun to the large quantity of drugs suffices to make the connection. Seuell, at any rate, does not offer any alternative explanation for why he stored a pistol next to a drug-distribution quantity of drugs and drug-distribution paraphernalia.

We affirm.