RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MORENO LEE JACKSON, II,

*Defendant-Appellant.*

> No. 25-1223

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cr-00112-1—Paul Lewis Maloney, District Judge.

Argued:  March 18, 2026

Decided and Filed:  April 15, 2026

Before:  BATCHELDER, THAPAR and MATHIS, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Christopher R. Knight, HAYNES AND BOONE, LLP, Dallas, Texas, for Appellant.  John J. Schoettle, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Christopher R. Knight, Brenna Helene Scully, HAYNES AND BOONE, LLP, Dallas, Texas, for Appellant.  John J. Schoettle, Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which THAPAR, J., concurred. MATHIS, J. (pp. 10–17), delivered a separate dissenting opinion.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  Moreno Lee Jackson, who has an extensive history of firearm and drug-related offenses, challenges the procedural reasonableness of his middle-of-the-Guidelines sentence of 212 months' imprisonment.  Because we find that Jackson waived any appellate challenge to his sentence, we **AFFIRM**.

**I.**

Moreno Jackson engaged in a series of crimes involving firearms and narcotics in Michigan from February to July 2024.  These incidents included multiple arrests involving firearms, drug overdoses, possession of fentanyl and methamphetamine, and fleeing from law enforcement.  Jackson's crime-spree came to an end on July 15, 2024, when ATF case agents arrested him pursuant to a warrant filed on July 8.

While represented by counsel, Jackson entered into a plea agreement in which he pleaded guilty to illegally possessing a Ruger 9mm pistol in violation of 18 U.S.C. §922(g)(1).  The incident underlying Jackson's plea occurred on February 20, 2024, when police officers attempted to stop Jackson's vehicle because they suspected that it had been involved in a robbery, Jackson fled from the police, later abandoned his car and ran on foot, and discarded a Ruger 9mm firearm during the chase.

In his plea agreement, Jackson "acknowledge[d] that he is subject to the enhanced penalties provided in Title 18, United States Code, Section 924(e)(1), because [he] has been convicted of three or more violent felonies and/or serious drug offenses.  The statutory mandatory minimum sentence that the Court must impose . . . is 15 years' imprisonment."  Jackson signed his plea agreement immediately below the following paragraph:

> I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those

contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Jackson further underscored his understanding of the plea agreement at his plea hearing, when he acknowledged under oath that he had signed the plea agreement and that his attorney had reviewed the agreement and answered all his questions about it. Jackson twice affirmed his understanding that "he had at least three prior convictions for crimes of violence" or serious drug offenses and therefore "[i]t [would] be the Court's obligation to sentence [him] to at least 15 years if [he was] convicted of this offense."

As listed on the presentence report ("PSR"), the offenses for purposes of the Section 924(e) enhancement included (1) Assault with Intent to Commit Sexual Penetration, (2) Felonious Assault, (3) Controlled Substance - Delivery/Manufacture (Cocaine, Heroin, or Another Narcotic) Less Than 50 Grams (2011), and (4) Controlled Substance - Delivery/Manufacture (Cocaine, Heroin, or Another Narcotic) Less Than 50 Grams (2018). Because of these four offenses, the district court calculated his offense level and criminal history category according to U.S.S.G. § 4B1.4, which provided a base offense level of 34 under § 4B1.4(b)(3)(A). After the court adjusted Jackson's base offense level for accepting responsibility, his final offense level was 31. Based upon Jackson's total offense level of 31 and a criminal history category of VI, the report calculated Jackson's advisory Guidelines range as 188 to 235 months. The district court considered Jackson's repeated use of firearms, significant criminal history, and risk to the public, and imposed a middle-of-the-Guidelines sentence of 212 months' imprisonment. Jackson now appeals. He contends that the district court erred by applying a sentencing enhancement under 18 U.S.C. § 924(e) and attributing multiple firearms to him. At bottom, Jackson challenges his sentence as procedurally unreasonable.

**II.**

We review for plain error a defendant's unpreserved procedural-reasonableness challenge. *United States v. Hawkins*, 165 F.4th 442, 455 (6th Cir. 2026). But we need not review waived claims at all. *United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021). One "branch" of the waiver doctrine is "invited error," and while we generally do not review it, we *may* review

an invited error for plain error to prevent "manifest injustice."[1] *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023).

**III.**

Jackson challenges his sentence as procedurally unreasonable. "A sentence can be procedurally unreasonable if the district court fails to properly calculate the Guidelines range." *United States v. Cabbage*, 91 F.4th 1228, 1230 (6th Cir. 2024). Jackson argues he is not subject to enhanced penalties under 18 U.S.C. § 924(e) because, as he sees it now, he does not have three prior convictions for violent felonies or serious drug offenses. Jackson's problem, however, is that he repeatedly agreed that he did.

Because we do not review waived claims, our review of Jackson's argument depends on whether he waived his challenge. Jackson contends that he did not waive an appellate challenge to this purported error, but that he merely invited the purported error and thus we should review his arguments to prevent manifest injustice. Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). And we have stated that, "[t]hough invited error is a branch of waiver, the two doctrines are not the same." *Akridge*, 62 F.4th at 263 (cleaned up). A person "invites error when he contributes in some way to the district court's error without intentionally relinquishing his rights." *United States v. Woods*, 61 F.4th 471, 481 (6th Cir. 2023).

Two cases largely govern the parties' arguments and our decision. The United States urges this court to find Jackson's argument waived under *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) because Jackson "'explicitly agreed' that he had at least three qualifying predicates under § 924(e)." But Jackson argues that, according to our decision in *United States v Montgomery*, 998 F.3d 693, 699 (6th Cir. 2021), he invited the error because

---

[1]We recognize both the general waiver rule and our discretion, in rare instances, "to deviate from the general waiver rule." *Turner v. United States*, 885 F.3d 949, 954 (6th Cir. 2018) (en banc). This is not one of those rare cases. After all, the goal of the ACCA is to keep serious drug dealers and violent offenders in prison. Nothing is unjust about fulfilling that purpose. So, when we look at a defendant's PSR and see, as is the case here, that the facts of the defendant's crimes are actually violent and/or constitute serious drug crimes, we need not, and should not, excuse their waiver.

"the record indicates that Mr. Jackson misunderstood applicable law and mistakenly believed that his prior convictions . . . qualified as predicate offenses under § 924(e)."

In *Aparco-Centeno*, the defendant agreed with the PSR classifying two of his prior convictions as aggravated felonies. 280 F.3d at 1086. The defendant later challenged that aggravated-felony classification on appeal, and we held that the defendant *waived* his argument because "[n]ot only did Aparco–Centeno not object to the district court's consideration of the two prior convictions as aggravated felonies under 8 U.S.C. § 1326, he explicitly agreed that they qualified as such." *Id.* at 1088. The defendant's counsel did not object to the PSR and also explicitly stated in his sentencing memorandum that "because . . . two of these offences were at least one year in duration, they are classified as aggravated felonies." *Id.*

But in 2021, we characterized our *Aparco-Centeno* holding as a "labeling error" and reasoned that "the situation in *Aparco-Centeno* is better understood as a case of invited error" because: (1) "[n]othing in our reasoning there shows that Aparco-Cent[e]no was aware that the statuses of his prior crimes were subject to dispute"; and (2) we improperly stated in *Aparco-Centeno* that we review *waived* arguments (rather than invited errors) when the "interests of justice demand it." *Montgomery*, 998 F.3d at 699.

In *Montgomery*, the district court miscalculated the defendant's Guidelines range after the defendant used an improper Guidelines calculation in his brief. *Id.* at 697. We found that the defendant did *not* waive his argument, despite the same type of "explicit agreement" that occurred in *Aparco-Centeno*, because "[h]e did not intentionally relinquish a known right." *Id.* at 699. Instead, by using the improper Guidelines range in his brief, "Montgomery invited the district court to reach [the] erroneous conclusions." *Id.* We explained that a defendant must know about and actively abandon the right he is waiving and therefore, "true waiver will be relatively rare." *Id.* at 697.

Since *Montgomery*, our distinction between waiver and invited error has been imprecise. *Compare Woods*, 61 F.4th at 482 (finding that defendants "invited the district court to err in designating them as career offenders under the 2018 Guidelines when they wrote in their briefings that they 'remain[ ] in the career offender guideline'"), *with United States v. Caballero-*

*Melgar*, No. 21-6036, 2023 WL 4864285, at *4 (6th Cir. July 31, 2023) (finding that "defense counsel waived the ability to raise the issue of the [*Pinkerton*] instruction's completeness on appeal" because he had "agree[d] to the modified instruction"). Accordingly, we have, on several occasions, declined to clarify the "hazy border" between waiver and invited error. *Cabbage*, 91 F.4th at 1231 (explaining that since the defendant "can't prevail either way, we will assume he didn't waive his challenge."); *see also United States v. Carter*, 89 F.4th 565, 569-70 (6th Cir. 2023) ("It is not necessary to decide where [defendant's] statement falls on the 'hazy border' between waiver and invited error. . . . [because] in this case, no manifest injustice will result from declining to consider Carter's challenge."). But we find that Jackson's express agreements constitute a waiver of his challenge and therefore, we decline to review it.

Before *Montgomery*, we consistently read *Aparco-Centeno* according to its own terms—as applying waiver. *E.g., Jackson*, 995 F.3d at 484; *United States v. Sherrill*, 972 F.3d 752, 769 (6th Cir. 2020) (acknowledging that an "explicit agreement constitutes waiver, or the 'intentional relinquishment or abandonment of a known right'") (citation omitted); *United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016) ("[W]here one makes a plain, explicit concession on the record, we will consider that argument waived.") (cleaned up); *United States v. McBride*, 826 F.3d 293, 294–95 (6th Cir. 2016) ("A defendant waives the argument that a sentencing enhancement does not apply by explicitly agreeing that it does, such as through plain, positive concurrence.") (cleaned up); *United States v. Ruiz*, 777 F.3d 315, 320 (6th Cir. 2015); *United States v. Priddy*, 808 F.3d 676, 681 (6th Cir. 2015) ("[W]here the defendant has explicitly agreed that a particular guideline calculation or enhancement applies to his sentence, any challenge to that enhancement on appeal is waived.") (cleaned up), *abrogated on other grounds by United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017); *United States v. Kennedy*, 499 F.3d 547, 553 (6th Cir. 2007); *United States v. Ward*, 506 F.3d 468, 477 (6th Cir. 2007); *United States v. Knox*, 593 F. App'x 536, 537 (6th Cir. 2015). And we have, since *Montgomery*, continued to cite *Aparco-Centeno* for the proposition that "[a] defendant waives an argument when he 'agree[s] in open court with a judge's proposed course of conduct.'" *United States v. Seuell*, 135 F.4th 480, 482 (6th Cir. 2025) (quoting *Aparco-Centeno*, 280 F.3d at 1088). So, although we stated in *Montgomery*, 998 F.3d at 699, that the distinction between waiver and invited error "fares no

better" than the confusion surrounding waiver and forfeiture, much of the tension between waiver and invited error emerged only *after Montgomery* and is attributable *to Montgomery*.

It is true that in *Aparco-Centeno*, we said that we review waived arguments when the "interests of justice demand otherwise." 280 F.3d at 1088. And in light of that sentence, in *Montgomery*, we posed the following question: "were we wrong (or at least inexact) to say that Aparco-Cent[e]no waived the challenge, or wrong to raise the possibility that we could review it anyway?" *Montgomery*, 998 F.3d at 699. We answered, "[m]ore likely it was the former—a labeling error on our part." *Id.* However, a more accurate reading of *Aparco-Centeno* shows that we were wrong to raise the possibility—in a sentence that had no bearing on our holding—that we could review a waived argument at all. Indeed, immediately before that extraneous sentence we correctly acknowledged that "[w]aiver is the 'intentional relinquishment or abandonment of a known right,' and these rights are not reviewable." *Aparco-Centeno*, 280 F.3d at 1088 (citation omitted). And immediately after that sentence, we quoted our longstanding waiver standard: "[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *Id.* (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990)). Then, we held that the defendant had waived his argument because that type of agreement was "exactly the course that [he had] followed in the court below." *Id.* Notably absent from *Aparco-Centeno* is any discussion of invited-error principles or the right to raise a waived issue. *See generally id.*

Therefore, we conclude that the so-called "labeling error" discovered in *Montgomery* is not rooted in our precedent that a defendant waives an argument by expressly agreeing with a judge's proposed course of action. We reaffirm the decades of cases from this Court holding that waiver occurs when a defendant agrees with a "judge's proposed course of conduct and then [later] charge[s] the court with error in following that course." *Sloman*, 909 F.2d at 182.

Jackson did not provoke or invite the district court to err. Rather, he expressly and consistently admitted that he had three qualifying predicate convictions and that he understood the associated consequences of that admission. Accordingly, Jackson's admissions before the district court constitute waiver. Indeed, Jackson and counsel signed a plea agreement in which he "acknowledge[d] that . . . [he] has been convicted of three or more violent felonies and/or

serious drug offenses," affirmed that he had "read [the] agreement and carefully discussed every part of it with [his] attorney," and affirmed that his attorney had advised him of the "sentencing provisions, and of the consequences of entering into [the] agreement."**2**  Then, at his plea hearing, Jackson again conveyed his understanding that he "had at least three prior convictions for crimes of violence" and that, accordingly, it would be the court's "obligation to sentence [him] to at least 15 years" if he was convicted of the offense.  Jackson again affirmed that his attorney had gone over the plea agreement in its entirety and answered all his questions.  And Jackson confirmed a second time that he had at least three prior convictions for crimes of violence or serious drug felonies.

Moreover, a defendant may waive any issue, so long as he knows the right he is waiving "in general." *Seuell*, 135 F.4th at 483.  He "need not know each possible defense or strategy that he forgoes by waiving a constitutional right." *Id.*  And Jackson's acknowledgments regarding the Section 924 enhancement and its supporting predicate offenses indicate that he certainly understood, in general, that he was giving up his right to appeal the sentence based on that enhancement.  Jackson waived the ability to challenge the procedural reasonableness of his sentence, and we decline to review his remaining arguments.  His motion to take judicial notice of the fact that his 2018 conviction under MCL 333.7401 was for delivery of less than 50 grams of cocaine is therefore moot.

At this point, if Jackson has any claim of error, it would be that his attorney provided ineffective assistance.  And that is a claim that he may raise in a post-conviction, collateral proceeding.

---

**2**The dissent argues that "Jackson knew how to waive rights, as he waived certain constitutional rights" listed in his plea agreement.  Dissenting Op. at 5.  But Jackson's "acknowledge[ment] that he is subject to the enhanced penalties provided in [the ACCA]" just a few pages earlier in the plea agreement is just as knowing and voluntary as his explicit waiver.  In both places, the plea agreement reflects Jackson's agreement and briefly describes the underlying legal issue.  So the only way to distinguish between them—finding one valid waiver, and the other invited error—is to impose a "magic words" requirement for waiver by requiring that the plea agreement caption it as an affirmative waiver.  And if the ultimate question is whether Jackson knew and understood what he was giving up, magic words aren't necessary.

## IV.

Based on the foregoing, we **AFFIRM** the judgment of the district court.

---

**DISSENT**

---

MATHIS, Circuit Judge, dissenting.   Moreno Jackson is currently serving a longer sentence than Congress intended for his crime.  But he shoulders some of the blame.  He (and the government) told the district court that he should be sentenced under the Armed Career Criminal Act.  The district court obliged.

It turns out that Jackson should not have been sentenced under ACCA.  Jackson thus invited the error that the district court committed.  Because the interests of justice demand that we review the invited error and because Jackson can show plain error, I would vacate Jackson's sentence.

## I.

The district court sentenced Jackson under ACCA for his felon-in-possession conviction. Typically, a defendant convicted of being a felon in possession of a firearm faces a sentence of up to 15 years' imprisonment.  18 U.S.C. §§ 922(g)(1), 924(a)(8).  But if the defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," ACCA prescribes a mandatory minimum sentence of 15 years' imprisonment.  *Id.* § 924(e)(1).

On appeal, Jackson disputes that he has three predicate convictions necessary to trigger the ACCA sentencing enhancement.  The district court concluded that Jackson had four such convictions: (1) a 2007 conviction for assault with a dangerous weapon; (2) a 2011 conviction for delivery or manufacture of a controlled substance; (3) a 2012 conviction for assault with intent to commit sexual penetration; and (4) a 2018 conviction for delivery or manufacture of a controlled substance.  Jackson does not dispute that his 2007 assault and 2011 drug convictions are qualifying ACCA predicate offenses.  And the government no longer argues that Jackson's assault-with-intent-to-commit-sexual-penetration conviction is a qualifying ACCA offense.

That leaves Jackson's 2018 drug conviction.  Jackson pleaded guilty to delivery of less than 50 grams of a mixture containing cocaine, in violation of Michigan Compiled Laws § 333.7401(2)(a)(iv).  That offense is a felony that carries a sentence of up to 20 years' imprisonment.

So is Jackson's 2018 drug conviction a "serious drug offense"?  ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Courts use the categorical approach to determine whether a state drug conviction qualifies as a serious drug offense.  *Shular v. United States*, 589 U.S. 154, 160 (2020).  Under that approach, "a state drug offense counts as an ACCA predicate only if the State's definition of the drug in question matches the definition under federal law."  *Brown v. United States*, 602 U.S. 101, 106 (2024) (citation modified).

To determine whether there is a match, ACCA requires "courts to examine the law as it was when the defendant violated it, even if that law is subsequently amended."  *Id.* at 111.  At the time Jackson committed the offense underlying his 2018 drug conviction, Michigan's definition of cocaine did not match the federal definition.  Michigan law criminalized [123 I]ioflupane, which is "a radioactive cocaine derivative . . . that is the active pharmaceutical ingredient in a drug used to diagnose patients who are suspected to have Parkinson's disease."  *Id.* at 108; *United States v. Wilkes*, 133 F.4th 600, 602 (6th Cir. 2025).  But "[t]he federal government legalized [123 I]ioflupane in 2015."  *Wilkes*, 133 F.4th at 602 n.2.  Because Michigan's definition of cocaine criminalized more conduct than the federal definition, Jackson's 2018 drug conviction is not a serious drug offense.

The government argues that despite the mismatch between Michigan law and federal law, Jackson's conviction is still a serious drug offense.  It is so, the government posits, because Michigan incorporates any drug exemptions available under federal law, and the State also excludes substances without the potential for abuse, like [123 I]ioflupane, from prosecution.  *See* Mich. Comp. Laws §§ 333.7229, 333.7227(1).  But these arguments fail for a key reason.

In Michigan, these statutes function only as affirmative defenses; they do not change the elements of the offense. *See People v. Hartuniewicz*, 816 N.W.2d 442, 447 (Mich. Ct. App. 2011); *People v. Dean*, 253 N.W.2d 344, 348 (Mich. Ct. App. 1977); *see also People v. Baham*, 909 N.W.2d 836, 845 (Mich. Ct. App. 2017) (per curiam) ("Once the prosecution has presented a prima facie case of manufacturing a controlled substance, the burden shifts to the defendant to present some competent evidence regarding the applicability of the personal-use exception. In other words, the personal-use exception functions as an affirmative defense, and the prosecutor is not required to disprove personal use as an element of the offense." (citation modified)). Thus, the defenses have no bearing on the categorical-approach analysis. *Cf. Smith v. United States*, 568 U.S. 106, 110 (2013).

Because Jackson's 2018 drug conviction is not a serious drug offense and because the government no longer argues that Jackson's assault-with-intent-to-commit-sexual-penetration conviction is a predicate offense, Jackson does not have the three predicate offenses needed for ACCA to apply. So he should not have been sentenced under ACCA.

Recognizing that ACCA should not have applied is the easy part. The hard part is deciding whether this court has a role to play in rectifying the error.

**II.**

The majority opinion concludes that Jackson waived any argument that the district court erred by sentencing him under ACCA. In my view, Jackson invited the error. The difference between waiver and invited error has confounded courts.

Start with waiver. "Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation modified). "[W]aiver requires more than merely agreeing to or even suggesting a specific standard." *United States v. Cabbage*, 91 F.4th 1228, 1231 (6th Cir. 2024). A criminal "defendant can only waive a right that he knows of and actively abandons." *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021). "[W]e look for signs that a party knew and understood both the relevant issue and the potential relevant arguments about it." *Walker v. United States*, 134 F.4th 437, 442–43 (6th Cir. 2025). Thus, "true waiver" is "relatively rare." *Montgomery*, 998 F.3d at 697. For instance, we held

that a defendant waived a right to bring a Second Amendment challenge to his sentence where the record reflected that he understood he could bring the challenge, but he told the district court that he wanted to proceed with sentencing without doing so. *United States v. Seuell*, 135 F.4th 480, 482–83 (6th Cir. 2025).

Turn to invited error. "Invited error occurs when a litigant contributes in some way to the district court's error without intentionally relinquishing his rights." *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023) (citation modified). A party can do this by inviting or provoking a district court to err. *See Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991). Our cases have described invited error as "a branch of the doctrine of waiver." *Id.* at 61.

The scope of our review depends on whether a defendant waived a right or invited error. We generally "do not consider waived arguments." *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023). "We sometimes—albeit rarely—review invited errors to prevent manifest injustice." *Id.* (citation modified). Whether we review an invited error is left to our discretion. *Id.* at 570.

As I see it, this case falls on the invited-error side of the "hazy border between invited error and waiver." *Montgomery*, 998 F.3d at 698. In his plea agreement, Jackson "acknowledge[d] that he is subject to" ACCA because he had three or more predicate offenses. R. 29, PageID 79. And during his guilty plea, he again admitted that he had three predicate offenses. By conceding that he had the requisite prior convictions for the district court to sentence him under ACCA, Jackson invited or provoked the court to commit an error. But nothing in the record shows that Jackson intentionally relinquished or abandoned a known right. In other words, the record does not reveal that Jackson knew of and actively abandoned his right to challenge his prior convictions as ACCA predicates. *See Montgomery*, 998 F.3d at 697. The plea agreement shows that Jackson knew how to waive rights, as he waived certain constitutional rights and he waived any right to pursue a Freedom of Information Act request for documents pertaining to his case.

This case is much like *Montgomery*. There, the defendant argued on appeal that the district court erroneously calculated his criminal history score and his Sentencing Guidelines

range. *Id.* at 696–97, 699.  But before sentencing, the defendant told the district court that he agreed with the very criminal history category and Guidelines range that the court used.  *Id.* at 699.  We concluded that the defendant invited the district court's error.  *Id.*

This case is also in line with *United States v. Woods.*  61 F.4th 471 (6th Cir. 2023).  There, we concluded that the defendants "invited the district court to err in designating them as career offenders" by telling the court that the career-offender guideline applied.  *Id.* at 482.

The majority opinion brushes aside this caselaw in favor of *United States v. Aparco-Centeno*.  280 F.3d 1084 (6th Cir. 2002).  There, we held that a defendant waived a challenge to the district court's determination that two of his prior convictions were "aggravated felonies under 8 U.S.C. § 1326."  *Id.* at 1088.  In his plea agreement, the defendant stipulated to the aggravated felonies.  *Id.* at 1086.  And the defendant's sentencing memorandum acknowledged that the prior convictions were "classified as aggravated felonies under 8 U.S.C. § 1101(a)(43)." *Id.* at 1088.  Although we concluded that the defendant waived his appellate challenge, we "d[id] not foreclose appellate review for plain error when the interests of justice demand otherwise." *Id.* (citation modified).  But we declined to review the defendant's claim that the district court plainly erred by classifying his prior convictions as aggravated felonies.  *Id.*

*Montgomery* says that "the situation in *Aparco-Cent[e]no* is better understood as a case of invited error."  998 F.3d at 699.  I agree.  But even if *Montgomery* is wrong, *Aparco-Centeno* specifies that we can review waived claims for plain error in the interests of justice.  280 F.3d at 1088.  And, as the majority opinion acknowledges, we can "deviate from the general waiver rule" for pure questions of law that "ha[ve] been fully briefed and argued."  *Turner v. United States*, 885 F.3d 949, 954 (6th Cir. 2018) (en banc) (citation modified).  The ACCA question is one of law that the parties have briefed and argued.  So whether we follow *Montgomery*, or *Aparco-Centeno*, or *Turner*, the result is the same.  We have discretion to reach merits of Jackson's ACCA argument.

## III.

I analyze Jackson's ACCA argument under the invited-error doctrine.  We have discretion to review an invited error.  *Montgomery*, 998 F.3d at 699.  But we will do so only if

the party that invited the error shows that the interests of justice demand it. *Id.* To meet this burden, a criminal defendant must show that he and the government "are equally at fault" and that failing to correct the error "would result in manifest injustice." *Id.* If the defendant overcomes that initial hurdle, he must then show plain error.

## A.

Start with the interests-of-justice component. Jackson and the government were equally culpable for the invited error. The plea agreement, in which Jackson acknowledged that ACCA applied, was executed by Jackson and the government. And at the change-of-plea hearing where Jackson agreed to having at least three predicate ACCA offenses, the government identified the four offenses.

Manifest injustice would result if we turn a blind eye to the error here. Applying ACCA, the district court sentenced Jackson to more than 17 years in prison. That is two years more than the court could have sentenced him if ACCA did not apply. Allowing someone "to linger longer in prison than the law requires" is the very essence of manifest injustice. *Id.* at 700 (quotation omitted). If a Guidelines-calculation error has "sufficient gravity" to qualify as manifest injustice, *id.* at 699, then surely a statutory-range-calculation error does when the sentence imposed on the defendant exceeds the maximum possible sentence under the correct statutory range.

## B.

I turn next to whether Jackson has shown plain error. To show plain error, a defendant must establish that: (1) there was an error, (2) the error was "plain," (3) the error affected "substantial rights," and (4) "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation modified). For the reasons provided in Part I above, the district court erred by sentencing Jackson under ACCA. So I proceed to consider the remaining prongs.

Plain error occurred. For an error to be plain, it "must be clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). "[W]hether a

legal question was settled or unsettled" at the time of the district court's decision, "it is enough that an error be plain at the time of appellate consideration." *Henderson v. United States*, 568 U.S. 266, 279 (2013) (citation modified).

The combination of *Brown v. United States* and *United States v. Wilkes* makes it beyond dispute that Jackson's 2018 drug conviction was not a serious drug offense. In *Brown*, the Supreme Court clarified that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." 602 U.S. at 123. *Brown* further confirmed that "the Federal Government legalized . . . [[123]I]ioflupane" in 2015. *Id.* at 107–08. *Wilkes* established that Michigan continued to criminalize the substance at least through 2022 when the defendant in that case was sentenced. 133 F.4th at 602. Because [[123]I]ioflupane remained illegal in Michigan at the time Jackson committed the offense that led to his 2018 drug conviction, Michigan law criminalized more conduct than federal law. Thus, Jackson's conviction cannot count as an ACCA predicate.

The error affected Jackson's substantial rights. An error affects a defendant's substantial rights when he shows "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (citation modified). The district court sentenced Jackson, under ACCA, to 212 months' imprisonment. In my view, ACCA does not apply. Thus, Jackson's sentence cannot exceed 180 months' imprisonment. So the outcome would have been different if not for the error.

The final plain-error factor favors Jackson as well. If "[t]he risk of unnecessary deprivation of liberty . . . undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error," *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018), then an error that results in a significantly higher statutory sentencing range should also be cured under plain-error review. "The possibility of additional jail time" for a defendant should generally lead us to correct plain errors. *Id.* at 139. That is particularly so here because the district court had no discretion to deviate from the ACCA statutory range.

**IV.**

Although I characterize what took place in this case as an error (or a plain error), I do not fault the district court for the error.  The parties told the court that Jackson was subject to ACCA.  And federal courts should not "sally forth each day looking for wrongs to right."  *Akridge*, 62 F.4th at 264 (quotation omitted).  Still, we should right the wrong in this case that will require Jackson to serve a sentence "greater than necessary."  18 U.S.C. § 3553(a).  Because the majority opinion reaches a different conclusion, I respectfully dissent.